**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**CASE NO.:  0:18-CV-61721-BLOOM/Valle**

SCOTT ROSSO, individually and on behalf of
all others similarly situated,

       Plaintiff,

v.

CHEETAH MOBILE AMERICA, INC., a
California Liability Company,

       Defendant.
_____/

**DEFENDANT CHEETAH MOBILE AMERICA, INC.'S MOTION**
**TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE,**
**<u>MOTION FOR MORE DEFINITE STATEMENT</u>**

Defendant, Cheetah Mobile America, Inc. ("**Defendant**"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 8(a)(2), 12(b)(1), 12(b)(2) and 12(b)(6), hereby moves to dismiss the Class Action Complaint (the "Complaint") (D.E. 1) filed by Plaintiff Scott Rosso ("**Plaintiff**" or **Rosso**"), *with prejudice*.  In the alternative to dismissal, Defendant moves for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## <u>INTRODUCTION</u>

The crux of this putative class action is Plaintiff's complaint about receiving **one** text message string promoting a security program app.  The text message string was allegedly sent to Plaintiff's cellular phone, not his home, and Plaintiff does not allege that the text message cost him a penny.  Plaintiff further does not allege, nor could he, that his cellular phone was rendered inoperable for any amount of time or that he was prevented from receiving other text messages or phone calls during the moment (literally no more than a second) in time when the text message string was being transmitted.  Yet, Plaintiff now invokes that one innocuous text message (and nothing else) in an attempt to recover a massive cash payout under the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA").  It is readily apparent that Plaintiff is not actually seeking to vindicate a privacy interest at all and that his privacy was not, in fact, invaded by receiving one text message.  Instead, he seeks an unwarranted statutory damages windfall in a purported class action based on a single text message that did not inflict a concrete injury on him or anyone else.

Yet, *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S.Ct. 1540 (2016) confirms, as the Supreme Court has repeatedly held, that an alleged statutory violation without a showing of a concrete injury does not satisfy the Article III requirements for standing.  There is nothing concrete or injurious about the nebulous "invasion of privacy" and "annoyance" that Plaintiff posits in his Complaint in a cursory fashion – a *de minimis* one-text inconvenience that could never support a legally cognizable tort claim under the circumstances.  The lack of a concrete injury-in-fact arising from the alleged one text message string warrants dismissal of this action, *with prejudice,* for lack of subject matter jurisdiction.

Moreover, even if Plaintiff has standing (he does not), sworn declaration testimony submitted in support of this Motion demonstrates that this Court lacks personal jurisdiction over Defendant, and furthermore that Plaintiff has sued the wrong entity, as Defendant does not conduct substantial business activity in Florida, did not send the text message at issue (or any

1

other similar text messages) in Florida, and is not otherwise involved in the conduct alleged in the Complaint. Additionally, the ambiguously worded Complaint should be dismissed because Plaintiff fails to state a claim upon which relief may be granted and even fails to provide notice of the claims asserted against Defendant. In the alternative to dismissal (or summary judgment should the Court elect to treat this Motion as a summary judgment motion as permitted by Fed. R. Civ. P. 12(d)), Defendant seeks a more definite statement because Defendant cannot adequately prepare a response to the Complaint as it now stands.

## PERTINENT ALLEGATIONS OF COMPLAINT

Plaintiff alleges that, on or about August 11, 2017, Defendant sent unsolicited telemarketing "text messages" to Plaintiff's cellular telephone number "selling Plaintiff a security program," and "advertis[ing] Defendant's application 'Securitymaster,' which Defendant sends to promote its business." (Compl. ¶¶23-26). However, the Complaint includes in paragraph 23 an image of two continuous, simultaneous text messages allegedly received by Plaintiff **at the same time**, which for all intents and purposes, constitute one uninterrupted text message string with two parts. (*Id*. at ¶23). Based exclusively on that single text message string depicted in the Complaint, Plaintiff alleges violations of the TCPA. The only alleged injuries are "invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion," along with "inconvenience," "harassment" and "disruption to his daily life." (*Id*. at ¶¶4, 35). Further, Plaintiff alleges that "Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction," and "Defendant's tortious conduct against Plaintiff occurred within the State of Florida" as "Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida." (*Id*. at ¶¶6, 8, 27). Finally, Plaintiff alleges that, "upon information and belief" only, the "[t]he text messages originated from telephone number 273-67, a number which upon information and belief is owned and operated by Defendant." (*Id*. at ¶31).

Although the three-Count Complaint includes general allegations that, in some situations, the Federal Communications Commission ("FCC") recognizes that automated or prerecorded telephone calls "can be costly and inconvenient" and "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used" (*id.* at ¶ 12 (citations

omitted)), Plaintiff makes no allegation that the text message string he purportedly received from Defendant actually cost him any money.  Plaintiff nevertheless demands, on behalf of himself and the other members of an expansive proposed class, "[a]n award of actual and statutory damages" of a "minimum of $500.00" for each violation, and up "$1,500.00 in [trebled] statutory damages, for each and every [willful and knowing] violation" alleged in Counts I, II and III.  (*Id.* at ¶¶54, 58, 59, 66, 67 & page 14 ("WHEREFORE" clause) at c).  Plaintiff also seeks declaratory and injunctive relief.  (*Id.* at ¶54 & page 14 ("WHEREFORE" clause) at a, b).

Counts I and II allege violation(s) of 47 U.S.C. §227(b)(1)(A)(iii) of the TCPA on behalf of Plaintiff and the putative class, while Count III alleges violation(s) of 47 U.S.C. §227(c)(5) of the TCPA on behalf of Plaintiff and the "Do Not Call Registry Class."  With respect to Counts I and II, Plaintiff alleges that "Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members" of the putative class.  (*Id.* at ¶50).  With respect to Count III, Plaintiff alleges that "Defendant … initiat[ed], or caus[ed] to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government."  (*Id.* at ¶65).  In Count III, Plaintiff also alleges that "Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200."  (*Id.* at ¶¶64, 66).

## <u>MEMORANDUM OF LAW</u>

**I.    The Complaint Should Be Dismissed With Prejudice Under Rule 12(b)(1) Because Plaintiff Lacks Standing to Pursue this Action.**

Plaintiff only alleges an "invasion of privacy" through the receipt of a **<u>single, one-time text message string</u>** on his cellular phone as his sole injury.  (Compl. ¶¶4, 23, 35).  For purposes of Plaintiff's claimed invasion of privacy, aggravation, annoyance, etc., the Complaint alleges only one "injury."  This alleged injury does not constitute the requisite "injury-in- fact" that is constitutionally required to confer Article III standing.

Not only are Rosso's bare, unadorned assertions of harm inadequate to even state a

3

claim,[1] they fall far short of the clear factual allegations necessary to meet a plaintiff's burden to demonstrate standing.  As explained by the Supreme Court in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) (cited in *Spokeo*), in finding that the plaintiffs lacked standing to pursue claims:

> It is a long-settled principle that standing cannot be "inferred argumentatively from averments in the pleadings," but rather "must affirmatively appear in the record." ... And it is the burden of the "party who seeks the exercise of jurisdiction in his favor," … "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  Thus, petitioners in this case must "allege ... facts essential to show jurisdiction.  If [they] fai[l] to make the necessary allegations, [they have] no standing."

*Id.* at 231(citations omitted).  While the imperceptible "invasion of privacy" or "annoyance" referenced without explication in the Complaint may be "particularized" injuries (*i.e.*, particular to Plaintiff), they are not "concrete" or "demonstrable" injuries that have been clearly alleged.  *See Warth v. Seldin*, 422 U.S. 490, 508 (1975) ("[a]bsent the necessary allegations of demonstrable, particularized injury, there can be no confidence of 'a real need to exercise the power of judicial review'") (citation omitted).

As outlined chronologically below with reference to case law from the 11th Circuit, this District and other jurisdictions, while faxes that tie up fax machines and prevent receipt of other faxes have been held to constitute an injury-in-fact, text messages have not, and the 11th Circuit is now poised to imminently address the precise question presented here – namely, whether the receipt of **one text message** allegedly in violation of the TCPA is sufficient to constitute a concrete injury-in-fact to confer Article III standing.

A.    Pre-*Spokeo* legal landscape in 11th Circuit:  *Palm Beach Golf*

In *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015), a pre-*Spokeo* decision of the 11th Circuit that found standing under a different provision of the TCPA, the 11th Circuit found a concrete and particularized injury through a fax machine being occupied by transmission of a "junk fax," which temporarily rendered it "unavailable for legitimate business messages."  *Palm Beach Golf* found standing in that case not because the defendant committed a substantive violation of the TCPA, but because

---

[1]    *See Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("[l]egal conclusions without adequate factual support are entitled to no assumption of truth," and a complaint "must plead 'more than an unadorned, the-defendant-unlawfully- harmed-me accusation'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

the plaintiff "has suffered a concrete and personalized injury in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data." *Id.* at 1251. Nowhere in the *Palm Beach Golf* decision did the 11th Circuit accept that a statutory violation alone is sufficient to confer standing.

In this case, unlike the fax machine in *Palm Beach Golf*, Plaintiff's cellular phone was not rendered unavailable by receiving the alleged text message string, nor does Plaintiff allege that he paid for the text (*i.e.*, paid more than he otherwise would have paid for his unlimited cellular phone plan had he not received the text string), and there is thus no concrete injury of any sort alleged, or that can be alleged. To be clear, there were no alleged financial costs whatsoever allegedly suffered by Plaintiff as a result of receiving one text message string, nor was Plaintiff's cellular phone unable to function or receive other messages or calls for even a moment as a result of the text message string.

B.      *Spokeo*

*Spokeo* reaffirmed the 11th Circuit's longstanding approach on standing adopted in *Palm Beach Golf*. In *Spokeo*, the Supreme Court was confronted with an action brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). The Court explained that, at the pleading stage, to have standing under Article III, the burden is on a plaintiff to clearly allege facts demonstrating that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The central issue in *Spokeo* – and the one that is fatal to Plaintiff here – is the requirement of a "concrete" injury, as distinct from a "particularized" injury. The injury alleged in the Complaint is the quintessential intangible, inconcrete injury – invasion of privacy. *Spokeo* undeniably and firmly rejects that a statutory violation itself is sufficient for standing, holding that a plaintiff does not satisfy "the injury-in-fact requirement **whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right**" since "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S.Ct. at 1549 (emphasis added). That is because a statutory violation "may

5

result in no harm." *Id.* at 1550; *see also Summers v. Earth Island Inst.,* 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing").[2]

     C.     Post-*Spokeo* 11th Circuit decisions: *Nicklaw I, Nicklaw II* and *Florence Endocrine*

In *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016) ("*Nicklaw I*"), decided five months after *Spokeo*, the 11th Circuit found that there was no standing resulting from the violation of a statutory requirement to timely record a satisfaction of mortgage.  Although the plaintiff urged that he suffered intangible harm because the legislature had created a substantive right that had been violated and that right has deep roots in common law (*id.* at 1002), the 11th Circuit recognized that "the relevant inquiry is whether [the plaintiff] was harmed when this statutory right was violated," because "not all statutory violations 'cause harm or present any material risk of harm.'"  *Id.* at 1002-03 (quoting *Spokeo*, 136 S.Ct. at 1550).

Finding "neither a harm nor a material risk of harm" where there were no allegations of financial loss or credit damage, dismissal for lack of standing was affirmed, with the 11th Circuit concluding that "the requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation."  *Id.* at 1003.  With nine of the ten members of the Court agreeing, rehearing *en banc* of *Nicklaw I* was denied.  *Nicklaw v. Citimortgage, Inc.*, 855 F.3d 1265 (11th Cir. 2017) ("*Nicklaw II*"). In conjunction with that denial, Judges William Pryor and Stanley Marcus (panel members in *Nicklaw I*) separately explained that "[t]he panel opinion adhered to the requirement of a concrete injury under Article III, as explicated in *Spokeo*," holding that "Nicklaw's complaint failed to allege that he suffered a concrete injury when the New York statutes were violated and that he failed to allege a risk of any future harm." *Id.* at 1268.  Significantly, *Nicklaw II* cited to *Palm Beach Golf*, 781 F.3d 1245, the aforementioned 11th Circuit TCPA decision, for the proposition that "the violation of a legal right alone does not satisfy the concrete injury

[2]     *Spokeo* discusses standing as it relates to procedural violations of statutes rather than substantive violations, but that is because *Spokeo* was dealing with an alleged procedural statutory violation in that case, not a substantive violation.  However, the Supreme Court's broad recognition of the constitutional requirement for "a concrete injury even in the context of a **statutory violation**,"  speaks directly to **all** statutory violations – both those of a substantive nature and those of a procedural nature.  *Spokeo*, 136 S.Ct. at 1549 (emphasis added).  This result is inescapable because *Spokeo* reiterates that "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547-48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997)).

requirement." *Id.* *Palm Beach Golf* was described as "explaining, in the context of the Telephone Consumer Protection Act, that 'where a statute confers new legal rights on a person, that person will have Article III standing to sue **where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights**.'" *Id.* (emphasis added) (citation omitted).

Most recently, in *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362 (11th Cir. 2017), another  case involving the TCPA's provisions regarding junk faxes, the 11th Circuit reiterated that, to have Article III standing, a plaintiff must have suffered an injury-in-fact, recognizing that "[w]here a statute confers new legal rights on a person, that person will have Article III standing to sue **where the facts establish a concrete, particularized, and personal injury to that person as a result** of the violation of the newly created legal rights." *Id.* at 1366 (quoting *Palm Beach Golf* (emphasis added)).  The 11th Circuit concluded that the TCPA creates a cognizable right, but nevertheless that a concrete injury existed on the facts of that case – not just because of the alleged statutory violation – but "because the plaintiff's fax machine is occupied while the unsolicited fax is being sent and the plaintiff must shoulder the cost of printing the unsolicited fax." *Id.*  Specifically, the 11th Circuit held:  "Because the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax,[3] the clinic established that it suffered a concrete injury." *Id.*

Significantly, the findings of standing under the TCPA in *Palm Beach Golf* and *Florence Endocrine* were not premised on an invasion of privacy or waste of time resulting from the receipt of proscribed junk faxes, instead hinging on the tangible injury of the plaintiffs' fax machines being rendered temporarily unavailable.  Rosso allegedly received one free-of-cost text message string on his cellular phone which did not prevent the device for even a second from receiving phone calls or other text messages.  Unlike the plaintiffs in *Palm Beach Golf* and *Florence Endocrine*, then, who received unsolicited faxes that actually created concrete injuries by inflicting financial costs upon them and rendering their fax machines inaccessible to other faxes during the times of transmission, Rosso suffered no comparable concrete injury as a result of the one text message string allegedly sent to him by Defendant.  Mobile devices receive multiple text messages simultaneously and normal call and other functions are not interrupted by

---

[3]      The plaintiff in *Florence Endocrine* did not receive just one fax in alleged violation of the TCPA, but four in the space of one month.  858 F.3d at 1365.

7

the receipt of a text message.  Rosso makes no allegation to the contrary.  This is not a case where it is alleged that Rosso was bombarded with text messages or that he had more than an instant of annoyance from receiving the subject text message string.  Therefore, adherence to the law of the 11th Circuit in *Palm Beach Golf* and *Florence Endocrine* compels the conclusion that Plaintiff's alleged violation of the TCPA consisting of a single unsolicited text alone is insufficient to establish standing, and Rosso must further demonstrate a legally cognizable concrete injury-in-fact to survive dismissal.

This is because, for there to be a concrete injury resulting from an alleged violation of the TCPA, the 11th Circuit's TCPA standing precedents – *Palm Beach Golf* and *Florence Endocrine* – look for the injury to be demonstrated through clear allegations of a plaintiff's device being "occupied and rendered unavailable for legitimate business."  *Palm Beach Golf*, 781 F.3d at 1252; *Florence Endocrine*, 858 F.3d at 1366.  Rosso does not, and cannot, allege that his mobile device was "occupied and rendered unavailable for legitimate business while processing" the subject text message string.  *Florence Endocrine*, 858 F.3d at 1366.  Rosso's dilemma is that he does not and cannot contend that when a cellular phone receives transmission of a text message, it cannot simultaneously receive or send other text messages or calls, unlike the fax machines at issue in *Palm Beach Golf* and *Florence Endocrine*, which would ring busy while receiving a fax transmission.  This is a crucial distinction between the concrete injury found in those cases and the one that is absent here.

### D.   Recent Southern District of Florida precedent

In this District, one court was "unwilling to extend *Palm Beach Golf*'s analysis, which focused on the tangible injury of the occupation of the plaintiff's fax machine under a completely different statutory scheme, to govern the intangible injury that Zia alleges here pursuant to two New York state statutes, merely because both cases involve the alleged violation of a statutorily created right."  *Zia v. CitiMortgage, Inc.*, No. 15-cv-23026-GAYLES, 2016 WL 5369316, *6 (S.D. Fla. Sept. 26, 2016) (Gayles, J.).[4]  Thus, neither the 11th Circuit in *Palm Beach Golf*, nor the Southern District of Florida court in *Zia*, accepted that a substantive statutory violation alone

---

[4]        The *Zia* court applied the teachings of *Spokeo*. There, the court granted a motion to dismiss a putative class action seeking statutory damages under New York statutes. *Zia*, 2016 WL 5369316 at *1. The plaintiff in *Zia* sought statutory damages for a statutory violation of timing requirements for recording satisfactions of mortgage. The court found that such allegations did not constitute a concrete injury in fact. The plaintiff "has identified no tangible or intangible harm that he suffered, other than the fact that the delay in recording occurred; and he has identified no 'material risk of harm' from the delay, simply the delay itself." *Id.* at *4 (citation omitted).

8

is sufficient to confer standing.  *See Zia,* 2016 WL 5369316 at *5 ("the deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation; a holding that the statutory violation is alone sufficient to establish standing would impermissibly conflate the concepts of statutory and constitutional standing") (internal quotation marks omitted) (quoting *Spokeo,* 136 S.Ct. at 1549; *Lee v. Verizon Commc'n, Inc.*, 837 F.3d 523, 529-30 (5th Cir. 2016)).

E.   Out-of-district authorities

The most comprehensive analysis of this standing issue is found outside this district in *Romero v. Dep't Stores Nat'l Bank*, No.: 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016).  The *Romero* court granted a motion to dismiss for lack of standing on the part of a plaintiff in a TCPA claim arising out of allegedly proscribed creditor calls to her cellular phone.  *Romero* concluded that the allegations of invasion of privacy in that case were insufficient to confer standing:

> Plaintiff argues that she suffered the exact harm that Congress wanted to eliminate with the TCPA, which Plaintiff argues consists of "unwanted calls to Plaintiff's cell phone and violation of privacy." This argument relates to the "particular" component, not the "concrete" component, of an injury in fact and ignores *Spokeo*'s holding that a statutory violation alone does not eliminate the requirement that a plaintiff establish a concrete injury caused by that statutory violation.  *Spokeo*, 136 S.Ct. at 1549. That Defendants called Plaintiff's cell phone may satisfy the "particular" component, but it does not automatically satisfy the requirement that the injury be "concrete."… [E]ven for the calls Plaintiff heard ring or actually answered, Plaintiff does not offer any evidence of a concrete injury caused by the use of an ATDS ["automated telephone dialing system"], as opposed to a manually dialed call. Accordingly, Plaintiff has not and cannot demonstrate that any of Defendants' over 290 alleged violations of the TCPA, considered in isolation, actually caused her a concrete harm.

*Id.* at *3.

If the "invasion of privacy" engendered by the autodialing of 290 calls to an individual's cellular phone does not, as a matter of law, convey standing, then the one text message string allegedly sent to Plaintiff falls far short of the mark.[5]  As explained in *Romero*:

---

[5]   Notably, Plaintiff could not, as a matter of law, pursue a Florida common law claim for invasion of privacy based on the receipt of one text message string.  *See, e.g., Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp.2d 1303, 1309-10 (M.D. Fla. 2010) (applying Florida law) (rejecting invasion of privacy claim arising from 35 to 40 debt collection calls over a three-month period because the calls, although "annoying and bothersome …[,] did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy," which requires that the invasion "must be highly offensive to a reasonable person" and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency"), *aff'd*, 627 F.3d 833 (11th Cir. 2010).

No reasonable juror could find that one unanswered telephone call could cause lost time, aggravation, distress, or any injury sufficient to establish standing. When someone owns a cell phone and leaves the ringer on, they necessarily expect the phone to ring occasionally. Viewing each call in isolation, whether the phone rings as a result of a call from a family member, a call from an employer, a manually dialed call from a creditor, or an ATDS dialed call from a creditor, any "lost time, aggravation, and distress," are the same. Thus, Defendants' TCPA violation (namely, use of an ATDS to call Plaintiff) could not have caused Plaintiff a concrete injury with respect to any (and each) of the calls that she did not answer.[6]

*Id.* at \*4.

The citation in Plaintiff's Complaint to a Congressional finding that autodialed calls are an invasion of privacy (*see* Compl. at ¶12) rings similar to an argument made in *Romero* and rejected by that court. *Romero*, 2016 WL 4184099 at \*5 ("Congress's finding that the proliferation of unwanted calls from telemarketers causes harm does not mean that the receipt of one telephone call that was dialed using an ATDS results in concrete harm. In other words, regardless of Congress's reasons for enacting the TCPA, one singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.").

There was one single text here; any "invasion" was thus *de minimis* and doesn't satisfy Article III. One out-of-district illustrative decision in this regard, which rejected on a motion to dismiss invasion of privacy as a basis for standing to bring a FCRA claim (as in *Spokeo*), is *Shoots v. iQor Holdings US Inc.*, No. 15–cv–563 (SRN/SER), 2016 WL 6090723 (D. Minn. Oct. 18, 2016). In *Shoots*, the invasion of privacy engendered by the alleged violation of one provision of the FCRA that was "divorced from any concrete harm" was deemed "too small to implicate – on a standing level – the interests protected by the larger statutory framework." *Id.* at \*4, 5 (citing *Spokeo*, 136 S. Ct. at 1549, 1550).

Yet another decision stressing the inadequacy of a single TCPA statutory violation to create a concrete injury sufficient to meet the constitutional requirements for standing is *Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780 (C.D. Cal. July 29, 2016). *Smith,* a case that is factually on all fours with this case, dismissed with prejudice a

---

[6]    *Romero* also found that the plaintiff "lacks standing to make a claim for any violation attributable to the calls she actually answered."  2016 WL 4184099 at \*5.

TCPA putative class action lawsuit arising from **one telemarketing phone call** allegedly made in violation of the statute that was claimed to cause injury consisting of "telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls." *Id.* at *1. The *Smith* court rejected the plaintiff's position, which is akin to Plaintiff's position here, reasoning as follows:

> [T]he receipt of one phone call, as alleged by Plaintiff, is comparable to the receipt of a text message and any drainage of battery from a single call is surely minimal…. [¶] At most, the phone call lasted for a few seconds. Any depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a de minimis injury. The Court finds that "[t]he injury is too de minimis to satisfy the standing doctrine's core aim of improving judicial decision-making by ensuring that there is a specific controversy before the court and that there is an advocate with sufficient personal concern to effectively litigate the matter." *Caldwell v. Caldwell*, 545 F.3d 1126, 1134 (9th Cir. 2008). Plaintiff's de minimis injury is not sufficient to confer standing. Nor can Plaintiff amend the Complaint to allege more than a de minimis injury given the fact that she received only one call.

*Id.* at *4.  *See also Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *1-3 (S.D. Cal. Sept. 29, 2016) (same trial court adopted the *Romero* reasoning, dismissing TCPA claim of plaintiff who allegedly received an unwanted cellular telephone call from the defendants' ATDS).

In contrast to the foregoing precedent, the Complaint relies on the older 9th Circuit decision in *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017), to contend that "'[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients'" and "'[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.''" (Compl. ¶22 (citing *Van Patten*, 2017 U.S. App. LEXIS 1591, at *12) (quotation omitted) (emphasis in original))).  In relying on *Van Patten*, which suggests that a substantive statutory violation – without more – is sufficient to create standing under *Spokeo*, Plaintiff ignores the recent reasoning and holdings of the 11th Circuit in the two *Nicklaw* decisions and in *Florence Endocrine* (which required allegations of a concrete injury beyond a substantive violation of the TCPA to establish standing).  Indeed, *Spokeo* holds that "Article III standing requires a concrete injury even in the context of a statutory violation" (136 S.Ct. at 1549), and the 11th Circuit has applied *Spokeo* in holding that "the requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and

grants a private right of action for its violation." *Nicklaw I*, 839 F.3d at 1003.  *See also Nicklaw II*, 855 F.3d at 1268 ("the violation of a legal right alone does not satisfy the concrete injury requirement") (citing *Palm Beach Golf*, 781 F.3d at 1251).  As for *Palm Beach Golf* and *Florence Endocrine*, those decisions focus on the tangible injury of rendering the device unavailable, which is not presented by a single text message.  For those reasons, *Van Patten* is inconsistent with and/or distinguishable from binding 11th Circuit authority and should not be followed by this Court.

Van Patten* is also misguided to the extent that court concludes that the invasion of privacy caused by unsolicited telemarketing calls is a common law tort, and one that Congress identified as a legally cognizable harm in every instance.  *Van Patten,* 2017 U.S. App. LEXIS 1591, at *12.  As discussed in footnote 5 above, a federal court applying Florida law found no actionable invasion of privacy claim even with 40 debt collection calls over a three-month period because the calls, although "annoying and bothersome …[,] did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy." *Oppenheim*, 695 F. Supp.2d at 1309-10.  As for Congressional intent to prevent invasion of privacy through the TCPA, *Spokeo* holds that a statutory violation alone does not eliminate the requirement that a plaintiff establish a concrete injury caused by that statutory violation.  *Spokeo*, 136 S. Ct. at 1549.  Again, the one text message string allegedly received by Plaintiff here did not, without more, cause a concrete injury as a matter of law.

In sum, the authorities discussed herein demonstrate that the standing requirements cannot be met by the gravamen of Plaintiff's complaint – the  allegation of a single unsolicited text message string that purportedly advertised a security program app.  Plaintiff proposes that an (at most) unidentifiable, intangible and fleeting inconvenience presented by receiving just one allegedly unauthorized text message string is a concrete injury that inflicts actual harm sufficient to pass constitutional muster.  Applying the foregoing authorities, Plaintiff has not alleged, and cannot allege, an injury-in-fact from receipt of a single text message (regardless of whether it was a "telemarketing" text message, when the text message was sent, who it was sent by or on whose behalf it was sent), and thus has no standing to pursue this lawsuit.  This action should be dismissed *with prejudice* under Rule 12(b)(1), as happened in *Romero*, *Smith* and *Ewing*.

F.    Pending *Salcedo* appeal

Currently pending before the 11th Circuit is *Salcedo v. Hanna*, No. 17-14077.  The issue

of first impression before the 11th Circuit in that case is precisely the standing issue raised herein:  whether the receipt of **one text message** allegedly in violation of the TCPA is sufficient to constitute a concrete injury-in-fact to confer Article III standing under *Spokeo* and *Nicklaw*.  The harm alleged by Salcedo is primarily invasion of privacy and annoyance based on a single text message, which Hanna contends is not sufficient to constitute the concrete injury-in-fact required by *Spokeo*.  Thus, like Rosso here, Salcedo similarly alleges only invasion of privacy-type torts and annoyance and a one-text "injury."  Moreover, like *Salcedo*, Rosso does not allege any financial harm, or that he was unable to use his phone while receiving the text.  Attached hereto as **Composite Exhibit 1** is the appellate briefing and docket sheet in *Salcedo*, which indicates that briefing is complete and oral argument is scheduled for **October 2**.  A decision should issue in *Salcedo* before the end of the year.[7]  Given that identical and dispositive standing issues have been presented to, and will shortly be argued to and decided by, the 11th Circuit, Defendant will be separately moving to stay this action until the 11th Circuit issues its decision in *Salcedo*.[8]

## II.  The Complaint Should Be Dismissed With Prejudice Under Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over Defendant.

As set forth in the Declaration of Joshua Ong, attached hereto as **Exhibit 2**, Defendant Cheetah Mobile America, Inc. is an Delaware corporation with its principal place of business in Palo Alto, California and (1) has no office, (2) owns no real property, (3) pays no taxes, and (4) is not registered to do business, Florida.  (Ong Decl. (**Exh. 2**), D.E. 18-2 at ¶¶6-8).  Further, Defendant did <u>not</u>:

    (1)    "send," "initiate" or "make" any unsolicited telemarketing text messages or calls

---

[7]    The median time interval in the 11th Circuit between oral argument and the final order in civil appeals, according to Judicial Business Reports published by the Administrative Office of the United States Courts, was **1.9 months in 2017, 1.8 months in 2016, and 2.1 months in 2015**.  *See* http://www.uscourts.gov/sites/default/files/data_tables/B04ASep15.pdf http://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2016.pdf http://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2017.pdf

[8]    *See Fridman v. Collection LLC*, No. 18-CV-20348-UU, 2018 WL 2254570, at *1–2 (S.D. Fla. Mar. 27, 2018) (Ungaro, J.) (staying similar one-text TCPA action pending resolution of appeal in *Salcedo* because "[r]esolution of that appeal will determine whether Plaintiff here has standing to pu[r]sue his claim").  As Judge Darrin Gayles of this Court noted when he certified the standing issues in *Salcedo* for interlocutory appeal to the 11th Circuit, "the issue of standing in this case involves an unsettled and controlling question of law," and "[r]esolving this issue will materially advance the termination of this litigation and potentially eliminate the need for protracted and expensive litigation over one text message."  *Salcedo v. Hanna*, Case No. 16-cv-62480-GAYLES, slip op. at D.E. 42, p. 2 (S.D. Fla. Jun. 14, 2017), attached hereto as **Exhibit 3**.

to Plaintiff's cellular telephone number advertising the "Securitymaster" program/application using equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular phones of Plaintiff or other individuals in Florida or residing in this judicial district (including persons on the National Do Not Call Registry) (*id*. at ¶10(1));

(2)    knowingly or willingly "cause" or "direct" text messages to be sent on its behalf by *third parties* to Plaintiff or other individuals in Florida or residing within this judicial district (including persons on the National Do Not Call Registry) (*id*. at ¶10(2));

(3)    generate, compile, review, or approve the phone numbers or recipients to which the text messages referenced in the Complaint were sent at any time, either before or after they were sent (*id*. at ¶10(3));

(4)    own and/or operate the telephone number 273-67 from which the subject text messages were allegedly sent (*id*. at ¶10(4)); or

(4)    otherwise have any involvement whatsoever in the matters alleged in the Complaint (*id*. at ¶10(5)).

Thus, Defendant has rebutted each of Plaintiff's general and specific personal jurisdiction allegations set forth in paragraphs 6 and 8 of the Complaint. Defendant does not engage in "substantial and not isolated activity within [Florida]," Fla. Stat. §48.193(2), nor did Defendant commit a tortious act in Florida, Fla. Stat. §48.193(1). Because Plaintiff has not met his burden to satisfy compliance with the Florida long-arm statute, this Court should conclude it has no personal jurisdiction over Defendant and should dismiss the case *with prejudice* against Defendant on this basis under Rule 12(b)(2). *See S.A.S.B. Corp. v. Concordia Pharm., Inc.*, No. 16-14108-CIV, 2017 WL 7796305, *3 (S.D. Fla. Dec. 4, 2017) (Marra, J.); *Mey v. Enter. Fin. Grp., Inc.*, No. 215CV463FTM99MRM, 2016 WL 7338411, at *5–6 (M.D. Fla. Dec. 19, 2016); *Rutherford v. Zoom Tan, Inc.*, No. 2:12-CV-509-FTM-29, 2013 WL 4001343, at *3–4 (M.D. Fla. Aug. 5, 2013).

**III.    The Complaint Should Be Dismissed With Prejudice Under Rule 12(b)(6) Because the Only Named Defendant is Not a Proper Party.**

The Complaint should also be dismissed because Plaintiff sued the wrong entity. *See Warter v. Boston Secs., S.A.*, No. 03-81026-CIV-RYSKAMP/VITUNAC, 2004 WL 691787, *13 (S.D. Fla. Mar. 22, 2004) (Ryskamp, J.) (granting defendant's Rule 12(b)(6) motion to dismiss

14

based on supporting affidavit where plaintiffs sued the wrong entity). In the alternative, if, pursuant to Fed. R. Civ. P. 12(d), this Court elects to treat this Motion filed pursuant to Fed. R. Civ. P. 12(b)(6) as a summary judgment motion, entry of summary judgment in favor of Defendant is appropriate. *Abreu v. Alutiiq-mele, LLC*, No. 11-20888-CIV, 2011 WL 13113718, *2–3 (S.D. Fla. Nov. 8, 2011) (Seitz, J.) (granting motion for summary judgment and dismissing case where undisputed affidavit evidence established that plaintiff sued the wrong entity); *see also Nelson v. Int'l Paint Co.,* 734 F.2d 1084, 1094 (5th Cir. 1984) ("summary judgment is often appropriate when the plaintiff has named the wrong party as the defendant") (citing 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2729, at 200)).

The Declaration of Joshua Ong evidences that Defendant Cheetah Mobile America, Inc. is an improper defendant as it had no involvement in any of the conduct alleged in the Complaint. (Ong Decl. (**Exh. 2**), D.E. 18-2 at ¶10). None of the matters or causes of action raised in the Complaint, then, are properly directed to Defendant. What is more, as discussed further below with respect to Plaintiff's failure to state a claim, there is no basis in the allegations of the Complaint or in the record evidence for disregarding the completely separate legal corporate existence of Defendant, nor is there any basis for holding Defendant vicariously liable for conduct of third parties. *See infra* Part IV.C. Thus, dismissal of the Complaint as to Defendant *with prejudice* is also warranted under Rule 12(b)(6) on the grounds that it is not a proper defendant.

## IV.   The Complaint Should Be Dismissed Under Rules 8(a)(2) and 12(b)(6) For Failure to State a Claim.

Should the Court conclude that it lacks subject matter jurisdiction or personal jurisdiction, or that Defendant is an improper defendant, there is no need to proceed further. The standing, personal jurisdiction, and improper defendant issues are all case-dispositive, but regardless, the Complaint should still be dismissed for failure to state a claim upon which relief can be granted.

### A.   Legal standards for failure to state a claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512,

(2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face.").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotations omitted); *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and quotations omitted). When considering a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

    B.    <u>Counts I and II should be dismissed because vicarious liability is not encompassed under 47 U.S.C. §227(b)(1)(A).</u>

Under 27 U.S.C. §227(b)(1)(A), which forms the basis for Counts I and II, the TCPA provides that it is unlawful for an entity "**to make** any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." (emphasis added). On the other hand, 27 U.S.C. §227(c)(5), which forms the basis for Count III, expressly provides that private actions may be commenced for violation of subsection (c) where the calls was made "**by or on behalf of the same entity**." (emphasis added).

In *Abramson v. 1 Glob. Capital, LLC*, No. 15-CV-61373, 2015 WL 12564318, at *2 (S.D. Fla. Sept. 23, 2015) (Bloom, J.), this Court observed that "[s]ome courts have found that this distinction in statutory language evinces Congress' clear intent to allow for vicarious liability under § 227(c) but not under § 227(b)." *Id.* (citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 124-43 (S.D. Fla. 2013) (Scola, J.), *rev'd in part*, 768 F.3d 1110 (11th Cir. 2014) (citing *Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718, at *3-4 (N.D. W. Va. Sept. 12, 2012); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012))); *Zelaya v. Newport Mktg., LLC*, No. 13-61139-CIV, 2014 WL 11696701, at *3 (S.D. Fla. Feb. 25, 2014) ("there is no vicarious liability under [§ 227(b)(1)(A)(iii)] of the TCPA") (Scola, J.).

To the extent, then, that Plaintiff seeks to impose liability on Defendant for actions taken by third parties "on its behalf," no such vicarious liability theory is cognizable as a matter of law under section 227(b)(1)(A) of the TCPA in accordance with the above-referenced authorities cited in *Abramson*. Furthermore, not only is vicarious liability not available as a matter of law under Counts I and II, but, in accordance with the Declaration of Joshua Ong and the discussion *supra* Part III, Defendant is the wrong party, *i.e.*, it did not sent the alleged texts. Counts I and II should therefore be dismissed under Rule 12(b)(6).

C.    <u>Counts I, II and II are subject to dismissal in any event because Plaintiff's allegations are insufficient to allege Defendant's vicarious liability.</u>

In *Abramson*, this Court chose not to decide the issue of whether an entity could be vicariously liable under TCPA section 227(b)(1)(A) because "Plaintiff fail[ed] to press the point, instead merely stating, without legal support, that third parties are regularly utilized by telemarketers." 2015 WL 12564318 at *3. This Court further stated as follows:

> [A]ny allegations of vicarious liability are conclusory in nature. Such allegations are referenced in a single paragraph, in a single line of Plaintiff's Complaint. If Plaintiff wishes to impose vicarious liability on Defendant for the actions of another, he must make it clear that he intends to do so, cite appropriate statutory provisions, and set forth relevant facts indicating that vicarious liability is proper. *See* [*Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1754628, at *5-6 (M.D. Fla. Apr. 17, 2015)] (setting forth methods of demonstrating vicarious liability). Accordingly, any allegations concerning vicarious liability for Defendant's TCPA violation must be dismissed.

*Id*; *see also Mesa v. Am. Express Educ. Assurance Co.*, No. 16-CV-24447, 2017 WL 2210271, at

*3 (S.D. Fla. May 18, 2017) (Huck, J.) (dismissing TCPA clam against defendants allegedly "legally responsible for telephone calls" made to plaintiff, because plaintiff had "not even attempted to allege the elements of the agency relationship" which was "required at the pleading stage of his case to raise a right to relief beyond mere speculation").

Similarly, here, there are only five (5) allegations sounding in vicarious liability contained in the Complaint, and all of them are "conclusory in nature." [9]  Moreover, Defendant has proffered testimony under oath establishing that it did not participate in any of the conduct alleged in the Complaint.  (*See* Ong Decl. (**Exh. 2**), D.E. 18-2 at ¶10).  As this Court previously held in *Abramson*, if Plaintiff nonetheless wishes to impose vicarious liability on Defendant for the actions of unnamed third parties, "he must make clear that he intends to do, cite appropriate statutory provisions, and set forth relevant facts indicating that vicarious liability is proper." 2015 WL 12564318 at *3 (citing *Shamblin,* 2015 WL 1754628, at *5-6).  Plaintiff makes no substantive allegations that could support vicarious liability on the part of Defendant.  Plaintiff does not name or provide identifying information regarding the alleged "third parties" that it claims acted "on behalf of Defendant," describe their relationships with Cheetah Mobile America, Inc., or explain why Cheetah Mobile America, Inc. should be held vicariously liable for their actions.  In as much as the Plaintiff's vicarious liability allegations are deficient under *Abramson*, and Plaintiff has not met his pleading obligations under *Twombly* and *Iqbal*, Counts I, II and III are subject to dismissal in accordance with Rules 8(a)(2) and 12(b)(6). [10]

---

[9]      (*See* Compl. at ¶27 ("Defendant **caused** other text messages to be sent to individuals residing within this judicial district.") (emphasis added); ¶37 (defining putative class as "[a]ll persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant **or anyone on Defendant's behalf**, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent") (emphasis added); ¶50 ("Defendant – **or third parties directed by Defendant** – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members" of the putative class) (emphasis added); ¶65 ("Defendant … initiat[ed], or **caus[ed] to be initiated**, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.") (emphasis added); ¶66 ("Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made **by or on behalf of Defendant** in violation of 47 C.F.R. § 64.1200.") (emphasis added)).

[10]     As discussed *supra* Part IV.B., Counts I and II brought under TCPA section 227(b)(1)(A) are also subject to dismissal because that subsection's statutory language does not impose vicarious liability for violations thereof.

      D.     <u>Plaintiff's scarce assertions with regard to the amount, frequency and timeframe</u>
              <u>of text messages are insufficient to satisfy federal pleading requirements.</u>

The amount, frequency and timeframe of the alleged text messages are not sufficiently specified in the Complaint.  The Complaint includes only one date (August 11, 2017) when one text message string was purportedly sent to Plaintiff (Compl. ¶23), without confirming whether more than one text was sent on that date or other date(s) or timeframes to Plaintiff or others. Consequently, Counts I-III should be dismissed in accordance with Rules 8(a)(2) and 12(b)(6) for failing to provide proper notice to the Defendant as to the claims asserted against it and failing to state a claim upon which relief may be granted.[11]

      E.     <u>Count III should be dismissed for failure to allege receipt of more than one</u>
              <u>telephone call within any 12-month period.</u>

Finally, to state a claim under section 227(c)(5) of the TCPA, a plaintiff must allege (1) receipt of more than one telephone call within any 12-month period (2) by or on behalf of the same entity (3) in violation of the regulations promulgated by the FCC.  47 U.S.C. § 227(c)(5). Rosso fails to state a claim under section 227(c)(5) since he allegedly received only one text message string.  (Compl. ¶23).  This single text message string allegation, combined with Plaintiff's unsupported allegations as to vicarious liability discussed *supra* Part IV.C., are insufficient to state a claim under section 227(c)(5).  Thus, Plaintiff's  section 227(c)(5) claim in Count III should be dismissed.

**V.**    **Alternatively to Dismissal, Plaintiff Should Be Required to Provide a More Definite Statement.**

Should this Court not grant Defendants' Motion to Dismiss, Defendants request that, in the alternative, given the extreme ambiguity of the Complaint, Plaintiff be ordered to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) as Defendants cannot reasonably prepare an answer as it now stands.  *See, e.g.*, *Boldstar Technical, LLC v. The Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007) (Hurley, J.) (the "purpose of the Rule is 'to strike at unintelligibility'"); *see also Gombos v. Cent. Mortg. Co.*, No. 10-81296-CIV-MARRA/JOHNSON, 2011 U.S. Dist. LEXIS 21413, at *5 (S.D. Fla. Mar. 3, 2011) (Marra, J.)

---

[11]     In *Herrera v. Bank of America, N.A.*, Case No. 15-cv-62156-BLOOM/Valle, slip op. at D.E. 30, p. 7 (S.D. Fla. Dec. 29, 2015), attached hereto as **Exhibit 4**, this Court granted a motion to dismiss a TCPA claim because the TCPA claim "fails to provide proper notice to the Defendants as to what claims are asserted against them" in that "[i]t is unclear as to which conduct—including the amount and frequency of the calls, when the calls were placed, and by whom they were placed—is attributable to each Defendant in the Count."  **Exh. 4** at 7.

("a pleading is insufficient if a defendant does not know the basic facts that constitute the claim for relief against it.  Such detail should not be left to discovery, for the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.") (internal citations omitted); *Yates v. Checkers Drive-In Rests., Inc.*, No. 17-CV-9219, 2018 WL 3108889, at *2 (N.D. Ill. June 25, 2018) ("the Court orders that Yates amend her complaint to provide a more definite statement as to the approximate date, time, and content of each text message that she contends violated the TCPA").

## CONCLUSION

The illusory "invasion of privacy" allegedly suffered by Plaintiff as a result of receiving one text message string from Defendant advertising a security program application does not give him standing under Article III of the United States Constitution to pursue any alleged violation of the TCPA.  As a matter of law, even if it is true that he received the advertisement alleged in the Complaint by way of a text message, the single text message did not inflict a legally cognizable concrete injury-in-fact upon Plaintiff sufficient to cause him actual harm and permit him to seek statutory damages.  Accordingly, this action should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  If the Complaint is not dismissed on standing grounds, Defendant should be dismissed with prejudice for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), or under Fed. R. Civ. P. 12(b)(6) because Plaintiff has sued the wrong entity and fails to state a claim under the TCPA.  In the alternative to dismissal (or summary judgment should this Court elect to treat this Motion as a summary judgment motion as permitted by Fed. R. Civ. P. 12(d)), Plaintiff should be ordered to provide a more definite statement of his claims.

WHEREFORE, Defendant Cheetah Mobile America, Inc. respectfully requests that the Court dismiss this action with prejudice or treat this Motion as a Motion for Summary Judgment and enter judgment in Defendant's favor and against Plaintiff, or alternatively order Plaintiff to provide a more definite statement in the Complaint, award Defendant its costs, and grant such other relief as may be deemed just and proper.

MIA 31378787v9

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendant requests oral argument on this Motion. Defendant believes that, given the case-dispositive nature of the Motion and the extent of the issues raised and the authorities cited, it would be helpful to the Court to permit a focused oral presentation.  Defendants estimate that 40 to 60 minutes total is sufficient for both sides' argument.

Dated:  September 19, 2018              Respectfully submitted,

By: s/ Robert T. Wright, Jr.
Robert T. Wright, Jr. (Fla. Bar No. 185525)
Irene Oria (Fla. Bar No. 484570)
Cristina B. Rodriguez (Fla. Bar No. 639982)
**STROOCK & STROOCK & LAVAN LLP**
200 South Biscayne Blvd., Suite 3100
Miami, Florida  33131
Tel: (305) 358-9900/Fax: (305) 789-9302
rwright@stroock.com
ioria@stroock.com
cbrodriguez@stroock.com

*Counsel for Defendant Cheetah Mobile America, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing is being served this day on all counsel of record identified on the Service List below in the matter specified, either via of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Andrew J. Shamis, Esq.
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
305-479-2299
Email:  ashamis@shamisgentile.com
*Counsel for Plaintiff Scott Russo*

Scott Edelsberg, Esq.
EDELSBERG LAW, PA
19495 Biscayne Blvd., Suite 607
Aventura, FL 33180
305-975-3320
Email:  scott@edelsberglaw.com
*Counsel for Plaintiff Scott Russo*

By: s/ Robert T. Wright, Jr.
Robert T. Wright, Jr. (Fla. Bar No. 185525)
Irene Oria (Fla. Bar No. 484570)
Cristina B. Rodriguez (Fla. Bar No. 639982)
**STROOCK & STROOCK & LAVAN LLP**
200 South Biscayne Blvd., Suite 3100
Miami, Florida  33131
Tel: (305) 358-9900/Fax: (305) 789-9302
rwright@stroock.com
ioria@stroock.com
cbrodriguez@stroock.com

*Counsel for Defendant Cheetah Mobile America, Inc.*

22